IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Cecelia P. Falkinburg,                      :
                    Petitioner             :
                                           :
        v.                                 :  No. 1867 C.D. 2014
                                           :  Submitted: April 24, 2015
Workers' Compensation Appeal              :
Board (Lowe's Home Centers, LLC),         :
                    Respondent             :


BEFORE:    HONORABLE BERNARD L. McGINLEY, Judge
           HONORABLE MARY HANNAH LEAVITT, Judge
           HONORABLE ROCHELLE S. FRIEDMAN, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE LEAVITT                                    FILED: August 14, 2015

        Cecelia P. Falkinburg (Claimant) petitions for review of an
adjudication of the Workers' Compensation Appeal Board (Board) granting her
compensation benefits for a closed period of time and, thereafter, terminating
them. In so doing, the Board affirmed the decision of the Workers' Compensation
Judge (WCJ). Claimant contends that because Employer did not prove by
competent medical evidence that she was fully recovered from her shoulder injury,
the Board erred. Concluding that it was Claimant who failed to prove that she
suffered a work-related shoulder injury, we affirm the Board.

        Claimant worked full-time as a forklift operator for Lowe's Home
Centers, LLC (Employer) for approximately three years. On October 21, 2011,
Claimant reported to Employer that she injured her neck, left shoulder and left

hand when she was hit by boxes that fell from a pallet.[1]  On November 17, 2011, Employer issued a notice of compensation denial (NCD) pursuant to the Workers' Compensation Act (Act).[2]  Thereafter, Claimant filed a claim petition.

At the hearing before the WCJ, Claimant testified.  She stated that her job required her to lift heavy objects and, accordingly, she wrapped her wrists for support.  Claimant explained that on October 21, 2011, while walking to her forklift, seven or eight boxes stacked on a pallet started to topple.  She put out her arm to stop the stack of boxes from falling.  The boxes were heavy and "pulled [her] straight down to the concrete…."  Notes of Testimony (N.T.), July 17, 2012, at 9; Reproduced Record at 169a (R.R. __). No one saw or heard the accident. Claimant found a co-worker to help her restack the boxes.  She then drove her forklift to the office and reported the accident to a safety manager.  After making the report, Claimant went home in pain.

The next day, Claimant informed Employer that she could not work because of her work injury, which she was treating at home with ice and a heating pad.  She used her vacation days because she was concerned that otherwise she might "lose … money coming in[.]"  N.T. 11; R.R. 171a.  On November 5, 2012, Employer told Claimant to see a doctor at Concentra, which she did the next day. Concentra did a magnetic resonance imaging (MRI) of her left shoulder; it also injected her shoulder and gave her a sling.  Concentra suggested physical therapy. Concentra released Claimant to light duty work, with a 20-pound weight restriction.

---

[1] Claimant was 55 years old at the time of the injury and earned approximately $15.00 per hour.

[2] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§1-1041.1, 2501-2708.

Claimant returned to work on November 7, 2012, and was given a job cleaning metal rails and beams. The job required her to move a large garbage can around the plant. The weight of the can strained her sore arm.

On November 9, 2012, Claimant went to physical therapy, but found it too painful. Her doctor released her to light duty, with a 10-pound weight restriction. Employer had no jobs available within that restriction. Claimant had a third appointment with Concentra, but it was cancelled when Employer refused to pay. She then received the NCD from Employer.

Claimant stated that the work injury has caused constant pain in her lower neck that radiates into her back and both shoulders. Sometimes the pain goes into her left arm; sometimes it shifts to the middle of her right arm. She described it as a burning, shooting pain. She stated that initially the pain was only on the left side of her body, but over time it has spread to her right side.

In support of her claim, Claimant presented the deposition testimony of James M. Jiunta, D.O., her family doctor, who examined Claimant on January 5, 2012. At that time, Claimant reported the work incident and told him that it caused severe pain to her left arm, radiating into her shoulder and neck. Her chief complaint was "left shoulder pain from her wrist to her neck." N.T., July 27, 2012, at 7; R.R. 22a. Based on his examination, he believed Claimant suffered some internal derangement and bursitis of the left shoulder as well as reduced sensation in her cervical region with radiculopathy.

Dr. Jiunta reviewed the report of the MRI on Claimant's left shoulder, which indicated mild supraspinatus tendinopathy and mild AC joint arthropathy. Dr. Jiunta ordered an MRI of Claimant's cervical spine, which was done on January 12, 2012. Dr. Jiunta opined that it established a C5-6 broad based shallow

3

disc herniation to the left side and a C6-7 broad based disc herniation to the right side. Dr. Jiunta concluded that the disc herniations were work related, as were the tendonitis, bursitis and cervical radiculopathy.

Dr. Jiunta ordered physical therapy. At the time of the deposition, he testified that Claimant needed a nerve conduction study and an evaluation by a neurosurgeon. He did not believe she could return to work in any capacity.

Jason Krumsky, Employer's safety manager, testified. He stated that in October 2011, Claimant came to his office and reported a work injury to her left wrist. When he commented on her left wrist wrapping, she explained that she had dropped a weight on it years ago, while exercising. Claimant asked to go home, where she had pain medicine. After she left, Krumsky went to the location of the incident she reported, but he did not find any fallen boxes or boxes out of place.

Employer also presented the deposition of Paul Shipkin, M.D., a neurologist. He did an independent medical examination (IME) of Claimant on May 2, 2012. He found Claimant's condition to be normal with respect to dexterity and sensory abilities. He asked Claimant to bring her chin down to her chest and she responded that she could not do this because of the pain. However, during the interview she completely flexed her neck on a number of occasions, and it did not appear to cause her discomfort. Claimant, who moved and talked normally at the time of the examination, stated that on a scale of 1 to 10, her pain level was a 10. Dr. Shipkin stated that 10 was a "suicide level pain" and not consistent with Claimant's demeanor. N.T., September 24, 2012, at 11; R.R. 71a.

Dr. Shipkin stated that, based on her description of the work incident, Claimant suffered a minor cervical strain and sprain on October 21, 2011. He saw no evidence of the strain during his examination. He explained that the MRI of her

4

left shoulder showed long standing degenerative arthritic changes, which could not have begun in 2011. Further, the cervical MRI showed degenerative arthritic changes at multiple levels. He testified that Claimant has disc desiccation, explaining that "[d]esiccation means drying out. When you see disc desiccation at multiple levels, that's a long standing wear and tear process." *Id.* at 21; R.R. 81a. Desiccation, Dr. Shipkin explained, is a function of aging. He stated that Claimant's morbid obesity also put significant strain on her joints and spine.

When asked about Dr. Jiunta's opinion that Claimant sustained work related disc herniations, tendonitis, bursitis and cervical radiculopathy, Dr. Shipkin responded that Dr. Jiunta was "cherry pick[ing]" findings from the cervical MRI. *Id*. at 25; R.R. 85a. That MRI did not show edema or swelling but, rather, progressive degenerative disc disease and osteoarthritic changes at multiple levels. The radiologist who read Claimant's left shoulder MRI also found arthritis, not trauma.

Dr. Shipkin acknowledged that Concentra diagnosed Claimant with a shoulder sprain and strain. He believed, however, that Claimant sustained a cervical, not a shoulder, sprain and strain. In either case, Claimant had fully recovered from this sprain. Dr. Shipkin believed Claimant required no further medical care and was able to work full-time at her usual occupation without restrictions. In Dr. Shipkin's affidavit of recovery, he stated that Claimant had suffered a cervical strain/sprain with left upper extremity radicular elements, from which she had fully recovered.[3]

---

[3] Employer offered Claimant a job at her original position based on the affidavit of recovery.

The WCJ accepted Claimant's narrative about the work injury. However, he accepted Dr. Shipkin's opinion that at worst this incident caused a sprain, from which Claimant had recovered. The WCJ relied on the expert opinion of Dr. Shipkin, a neurologist, that the MRI showed disc degeneration but not disc herniation. The WCJ found that this condition pre-dated the work injury. Based on these findings, the WCJ found that Claimant proved a work injury on October 21, 2011, and granted her benefits as of that date. Because the credited evidence established that Claimant had recovered from her sprain as of May 3, 2012, the WCJ terminated her benefits as of that date.

Claimant appealed to the Board, which rejected her claim that the WCJ disregarded competent medical evidence that Claimant sustained an injury to her cervical spine and to her left shoulder, from which she was not fully recovered. The Board also rejected her claim that the WCJ did not issue a reasoned decision, concluding that the WCJ's findings were sufficient to permit appellate review.

In her petition for this Court's review, Claimant raises four assignments of error.[4] First, Claimant argues that the WCJ erred in terminating benefits because Dr. Shipkin did not testify that Claimant made a full recovery from her shoulder injury but, rather, addressed only her cervical sprain. Second, Claimant argues that the WCJ erred in finding that Claimant was suffering from a pre-existing condition, when neither doctor so testified. Third, Claimant argues Employer's evidence did not support a termination of benefits because it did not

---

[4] This Court's standard of review is to determine whether an error of law or a constitutional violation was committed or whether the findings of fact are supported by substantial, competent evidence. *Myers v. Workers' Compensation Appeal Board (University of Pennsylvania and Alexsis, Inc.)*, 782 A.2d 1108, 1110 n. 1 (Pa. Cmwlth. 2001).

6

show that she was recovered from her shoulder injury. Fourth, Claimant requests this Court enforce a settlement agreement of the parties.

We begin with Claimant's assertion that Dr. Shipkin's testimony was not competent because he did not address her left shoulder injury. Section 407 of the Act states that

> [a]ll notices of compensation payable and agreements for compensation and all supplemental agreements for the modification, suspension, reinstatement, or termination thereof … shall be valid and binding unless modified or set aside as hereinafter provided.

77 P.S. §731. Claimant argues that because Employer's NCD identified the injury as a left hand and shoulder sprain/strain, Dr. Shipkin had to testify that she was recovered from that injury. Employer counters that this case does not involve a notice of compensation payable (NCP) whereby an employer accepts liability for the injury stated therein. Rather, this is an NCD, in which Employer denied liability for any alleged work injury. The NCD did not concede that Claimant suffered a left shoulder work injury.

We agree with Employer that it did not accept Claimant's alleged shoulder injury. Claimant had the burden of proving the existence of an injury causing disability and the duration of the disability. *Inglis House v. Workmen's Compensation Appeal Board (Reedy)*, 634 A.2d 592, 595 (Pa. 1993). Further, a WCJ is

> vested with the authority to render adjudications on claim petitions which incorporate aspects of modification, suspension or termination where the evidence so indicates, without the necessity of formal petitions by the employer. *See generally Connor v. Workmen's Compensation Appeal Bd. (Super Sucker, Inc.)*, 155 Pa.Cmwlth. 102, 105, 624 A.2d 757, 758 (1993)(stating that, in proceedings on a claim petition, "[i]f the

7

referee feels the evidence supports a finding of disability only for a closed period, he is free to make such a finding"), *appeal denied*, 535 Pa. 676, 636 A.2d 635 (1993).

*Vista International Hotel v. Workmen's Compensation Appeal Board (Daniels)*, 742 A.2d 649, 658 n.11 (Pa. 1999).

The only work injury found by the WCJ was a cervical strain or sprain, which Dr. Shipkin addressed. WCJ Decision, May 31, 2013, at 3, Finding of Fact No. 12; R.R. 15a. Further, Dr. Shipkin opined that Claimant was fully recovered from her strain or sprain and that her current problems are not work related; the WCJ accepted Dr. Shipkin's opinion. It is solely for the WCJ, as fact finder, to assess credibility and the weight of the evidence. *Elliott Turbomachinery Company v. Workers' Compensation Appeal Board (Sandy)*, 898 A.2d 640, 647 (Pa. Cmwlth. 2006).

In any case, Dr. Shipkin did not ignore Claimant's shoulder injury, noting that Concentra diagnosed Claimant with a shoulder sprain and strain. However, Dr. Shipkin opined that Claimant's statement that her pain was "radiating out over the trapezius ridge" indicated "a soft tissue contusion involving the neck area," not the shoulder. N.T., September 24, 2012, at 43; R.R. 103a. Thus, Dr. Shipkin explained his opinion that Claimant sustained a cervical sprain and strain, as opposed to a shoulder sprain. In short, Claimant did not prove that she suffered a left shoulder injury as a result of the October 21, 2011, incident because her evidence was rejected.

In her second issue, Claimant asserts that the WCJ erred in holding that she had a pre-existing condition, *i.e.*, disc disease. Dr. Shipkin stated that several years prior to the work incident, Claimant injured her left upper arm while working with exercise weights. Claimant contends this information is false and,

8

further, Dr. Shipkin could not say with certainty whether this prior injury played a role in the work injury. Employer responds that its witness, safety manager Jason Krumsky, testified that when Claimant reported her work injury, she told him that she wrapped her arm because of an injury sustained when lifting weights.[5]

Claimant relies upon *State Workmen's Insurance Fund v. Workmen's Compensation Appeal Board (Wagner)*, 677 A.2d 892, 895-96 (Pa. Cmwlth. 1996), for the proposition that a medical opinion is not competent where it is not supported by record evidence on the injury. Claimant believes that the record does not establish that she had hurt her arm in a previous accident. Further, she points out that Dr. Shipkin testified that he could not "say with any degree of certainty whether or not the prior, if indeed it's true ... her prior left upper extremity [weight lifting] injury played a role in any symptoms she might have had after 10/21/11." N.T., September 24, 2012, at 38; R.R. 98a.[6] Whether Claimant ever suffered a prior injury is irrelevant, making *Wagner* inapposite. As Claimant acknowledges, Dr. Shipkin's opinion that she suffered a prior trauma was not key to his opinion about her pre-existing condition, which was degenerative disc disease.

The WCJ found that Claimant had significant degenerative arthritis in her spine prior to the work injury and "that she suffered *previous difficulties* with her upper extremities that caused her to wrap or bandage her wrists." WCJ Decision, May 31, 2013, at 2, Finding of Fact No. 12; R.R. 14a (emphasis added).

---

[5] While Krumsky noticed that Claimant's left wrist was wrapped, he could not remember if her right wrist was also wrapped. Claimant testified that she wrapped both wrists for support.

[6] Claimant's counsel questioned Dr. Shipkin about how he learned of the weightlifting injury. Dr. Shipkin testified that he did not remember how he learned this information.

Claimant argues that she was not injured while working with weights and, thus, the WCJ erred in referring to "previous difficulties."

Krumsky testified that Claimant told him she sustained an injury lifting weights. Specifically, Claimant told him the left wrist injury "happened years and years ago when she used to workout, [and] she said she sustained a severe injury when she dropped plate weights on it for like weight lifting." N.T., November 30, 2012, at 11; R.R. 130a. This testimony was not challenged on cross-examination. After Krumsky testified, Claimant was called by her counsel on rebuttal to address "anything that he testified to that [she felt] was incorrect." *Id.* at 31; R.R. 150a. She did not refute Krumsky's testimony about the weightlifting incident in any way.[7] In short, the record evidence is consistent with the WCJ's finding about Claimant's "previous difficulties."

In her third issue, Claimant contends that the WCJ erred in granting Employer's termination petition. She contends that Dr. Shipkin's testimony was inadequate because he did not address Claimant's shoulder injury. Employer responds, first, that it did not file a termination petition. The WCJ granted the claim petition for a closed period of time, crediting the evidence of Dr. Shipkin that Claimant had recovered from the work injury. Second, Employer reiterates that the shoulder injury was not an accepted injury. Although Dr. Jiunta testified that Claimant sustained a shoulder injury, this testimony was not credited by the WCJ.

Claimant's third issue is rejected for the reasons already presented in our discussion of Claimant's first issue.

---

[7] Primarily, Claimant responded to Krumsky's testimony that he did not find any physical evidence that boxes had fallen from a pallet in the area where Claimant was injured.

10

In her final issue, Claimant asks this Court to enforce a settlement agreement of the parties. Claimant explains that while her appeal was pending, the parties reached a settlement agreement, prompting her to withdraw her Board appeal. One day later, on September 4, 2014, Employer filed a petition with the WCJ to approve a compromise and release (C&R) agreement. Despite this, the Board issued an adjudication on September 22, 2014.

Employer acknowledges that it filed a C&R petition, but it withdrew the petition when negotiations broke down. Employer contends that a C&R agreement has no significance until it is approved by a WCJ, which did not happen in this case.

Claimant "reluctantly acknowledges" that the C&R cannot be enforced because it was not approved by the WCJ. Claimant's Brief at 15. Alternatively, Claimant argues that she should be able to argue the merits of the Board's adjudication even though she withdrew her appeal.

It is beyond peradventure that "settlement agreements are not valid until they are approved by a WCJ." *McKenna v. Workers' Compensation Appeal Board (SSM Industries, Inc. and Liberty Mutual Insurance Company)*, 4 A.3d 211, 213 (Pa. Cmwlth. 2010). In *McKenna*, the employer submitted a proposed C&R agreement, but later withdrew the petition when the parties could not agree on all terms. The claimant filed a penalty petition asserting that the employer violated the Act by refusing to execute the agreement. This Court held that a C&R is not binding until approved by the WCJ and the employer did not violate the Act because the agreement was not "final, conclusive or binding." *Id.*

As in *McKenna*, Employer had no obligation to honor an unapproved C&R agreement. Claimant now agrees that this Court cannot enforce the proposed

11

C&R and requests only to be able to argue the merits of her appeal to this Court, which request is not disputed by Employer.

Accordingly, the order of the Board is affirmed.

_____
MARY HANNAH LEAVITT, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Cecelia P. Falkinburg, : 
                Petitioner : 
             : 
             v. : No. 1867 C.D. 2014
             : 
Workers' Compensation Appeal : 
Board (Lowe's Home Centers, LLC), : 
                Respondent : 

# **O R D E R**

AND NOW, this 14th day of August, 2015, the order of the Workers' Compensation Appeal Board in the above-captioned matter, dated September 22, 2014, is AFFIRMED.

                                          _____

                                          MARY HANNAH LEAVITT, Judge